## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

LORI HARTLINE, ON BEHALF OF
HERSELF AND THOSE SIMILARLY
SITUATED,

                Plaintiff,

v.

DOLLAR GENERAL CORPORATION,
DOLGENCORP, LLC D/B/A DOLLAR
GENERAL, INDIVIDUALLY,
JOINTLY, SEVERALLY, OR IN THE
ALTERNATIVE,

                Defendant.

Civil Case No.: 24-CV-27-GLJ
_____

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Lori Hartline ("Plaintiff" or "Mr. Hartline"), on behalf of herself and those similarly situated, by way of Complaint, states:

## NATURE OF THE ACTION

1.    This is a consumer protection class action against DOLLAR GENERAL CORPORATION ("DGC"), and DOLGENCORP, LLC D/B/A DOLLAR GENERAL ("DOLGEN") (collectively, "Defendants") arising out of Defendants' policies and practices of regularly charging Plaintiff and putative class members a higher price at the register than the price of merchandise advertised on the shelves at the time of sale at its Dollar General stores in Oklahoma.

2.    The class action claims arise from Defendants' policy and practice of charging customers a higher price at the cash register on various items than the price advertised on the in-store shelves, in violation of Okla. Stat. Tit. 15, §§ 751, *et seq*., and Oklahoma common law on behalf of consumers.

## VENUE AND JURISDICTION

3.      The Court has personal jurisdiction over the Defendant because it regularly conducts business transactions in this District and has committed the complained-of acts in this District.  For example, Defendant maintains a store in Porum, Oklahoma, which is in this District.

4.      Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d)(2), as the amount in controversy is in excess of $5 million.

## PARTIES

5.      Plaintiff resides in Checotah, Oklahoma.

6.      DOLGEN operates stores under the "Dollar General" brand name in the State of Oklahoma. DOLGEN is incorporated as a limited liability company under the laws of the State of Kentucky with a principal place of business at 100 Mission Ridge, Goodlettsville, Tennessee.

7.      Upon information and belief, DGC is a separate legal entity from DOLGEN but acts as its parent company with its principal place of business located in Goodlettsville, Tennessee.

## FACTS RELATED TO DOLGEN

8.      Plaintiff and all others similarly situated are persons who shop at Dollar General stores in Oklahoma.

9.      Defendants operate retail stores that offer a variety of inexpensive merchandise for consumers, including home products, seasonal products, consumables, and apparel.

10.      Defendants' business model is focused on offering products at competitive prices (typically less than $10) in a convenient, small-store format. Defendants' stores are located in

locations that are easily accessible to its customers. It follows a small-box format and the stores have an easy ''in and out'' shopping set-up.[1]

11.    Defendants cater mainly to low-income and middle-income customers in rural and suburban areas. Defendants' target customers earning approximately $40,000 a year or below.[2]

12.    Defendants look to build stores mostly in rural areas where a big box retailer or grocery store is not within 15 or 20 miles and the vast majority of Dollar General stores, around 75%, are located in towns with 20,000 or fewer people.[3]

13.    As of March 2022, Defendants owned and operated approximately Five-Hundred Twenty-Seven (527) Dollar General stores in Oklahoma, with more locations scheduled to open.[4]

### FACTS RELATED TO PLAINTIFFS' TRANSACTIONS

14.    Plaintiff regularly shops at the Dollar General Store Number #21606 located at 428917 Texanna Rd., Porum, OK 74455 ("Dollar General Porum").

15.    While shopping at Dollar General Porum in the Spring of 2023, Defendants' overcharged Ms. Hartline by charging her more at checkout than prices advertised on the shelves.

---

[1] See https://marketrealist.com/2017/04/dollar-general-why-small-format-stores-are-key/ (last visited    Jan. 14,    2024).

[2] Dollar General states:  "We generally locate our stores..to best serve the needs of our core customers, the low and fixed income households often underserved by other retailers[.] 2022 Annual Report, p. 7.  which is available online here:  https://investor.dollargeneral.com/websites/dollargeneral/English/3200/annual-reports.html (last visited January 14, 2024).

[3] See https://www.cnn.com/2019/07/19/business/dollar-general-opposition (last visited    Jan. 14,    2024).

[4]    See 2022 Annual Report, p. 21.

16. Her experience prompted Ms. Hartline to file a complaint with the Oklahoma Attorney General in May 2023. *See* **Exhibit 1**. Defendants never responded to her complaint nor did Defendants reimburse her for the amount Defendants overcharged her.

17. On June 15, 2023, Ms. Hartline made another purchase at Dollar General Porum, using her debit card, during which Defendants again charged her a higher price for its merchandise than the advertised shelf price. Specifically, Defendants advertised a price of $3.00 for each 25oz can of "Bud Light Chelada." Ms. Hartline purchased three (3) cans of this product and was charged $3.15 for each. As such, Defendants overcharged Ms. Hartline a total of $0.45. *See* **Exhibit 2**. Receipt, advertisement.

18. That same day, Ms. Hartline called DOLGEN and submitted a complaint, but, as of the date of this Complaint, Defendants have never reimbursed Plaintiff despite knowing they overcharged Plaintiff.

19. On or about June 22, 2023, Ms. Hartline, using her credit card, purchased eleven (11) items at Dollar General Porum during which Defendants charged her a higher price for its merchandise than the advertised shelf price. The specific overcharges are outlined below:

(See **Exhibit 3:** Receipt, advertisements)

| Date | Location | Brand | Product | Price on Sign | Price at Register | Overcharge Amount |
|------|----------|-------|---------|---------------|-------------------|-------------------|
| 22-June-23 | Porum | Wonder | Classic White Bread | $2.80 | $3.35 | $0.55 |
| 22-June-23 | Porum | Clover Valley | SF Strawberry Sugar Wafers | $1.50 | $2.50 | $1.00 |
| 22-June-23 | Porum | Dr. Pepper | 2x 12-pack of Dr. Pepper | 2 for $13.00 | $7.95 ea. | $2.90 |

20.     On or about June 22, 2023, Ms. Hartline filed another complaint with the Oklahoma Attorney General. *See* **Exhibit 4**, Oklahoma Attorney General Consumer Complaint yet Plaintiff has never been reimbursed for these overcharges.

21.     On August 27, 2023, Ms. Hartline made another purchase at Dollar General Porum, using her debit card, during which Defendants charged her a higher price for its merchandise than the advertised shelf price. Specifically, Defendants advertised a price of $10.30 for "Forever Pals cat litter." Ms. Hartline purchased one (1) container of Forever Pals cat litter and was charged $11.30, overcharging Ms. Hartline by $1.00. *See* **Exhibit 5**, Receipt, advertisement.

22.     On or about August 27, 2023, Ms. Hartline filed a third complaint with the Oklahoma Attorney General. *See* **Exhibit 6**, Oklahoma Attorney General Consumer Complaint. Again, Ms. Hartline never received a response from Defendants, nor has she been reimbursed for the overcharges.

23.     On or about October 10, 2022, an individual in New Jersey, unknown to Ms. Hartline, commenced a lawsuit against Defendants in the Superior Court of New Jersey, Law Division, Monmouth County, stylized *Ryan Button on behalf of himself and others similarly situated v. Dollar General Corporation, et al.*, assigned docket number MON-L-002774-22 (the "NJ Overcharge Matter"). A copy of the complaint, docket sheets, and an excerpt from the Notice of Removal is attached as **Composite Exhibit 7**.[5]

24.     Defendants were served with the summons and complaint in the NJ Overcharge Matter on or about November 4, 2022. *See Exh.* 8, p. 54 at ¶ 2.

_____

[5] On December 5, 2022, the defendant (under various entities) in the NJ Overcharge Matter removed the matter to the United States District Court for the District of New Jersey. As such, docket sheets for both the state court and federal court are attached.

25.    On or about October 11, 2022, another plaintiff, unknown to Ms. Hartline commenced a separate lawsuit against Defendants in the Court of Common Pleas, Lorain County, Ohio, stylized *Norman Husar, on behalf of himself and those similarly situated v. Dolgen Midwest, LLC d/b/a Dollar General*, assigned docket number 22-CV-207195 (the "OH Overcharge Matter"). A copy of the complaint, docket sheets, and an excerpt from the Notice of Removal is attached as **Composite Exhibit 8**.[6]

26.    Defendants (under various entities) were served with the OH Overcharge Matter summons and complaint on or about October 14, 2022. *See Exh. 2*, p. 98 at ¶ 2.

27.    On or about November 1, 2022, the State of Ohio, through its Attorney General, commenced an action against DGC, stylized *State of Ohio ex rel. Attorney General Dave Yost v. Dollar General Corporation d/b/a Dollar General*, assigned docket number cv-2022-11-1812 (the "OH AG Matter"). A copy of the complaint and docket sheet is attached as **Composite Exhibit 9**.

28.    On or about November 9, 2022, DGC was served with the OH AG Matter summons and complaint. *See Exh.* 9, p. 8.

29.    On or about January 23, 2023, yet another plaintiff unknown to Ms. Hartline, commenced a lawsuit in the state of New York against Defendants in the United States District Court for the Southern District of New York, stylized *Joseph Wolf and Carmen Wolf, on behalf of themselves and those similarly situated v. Dollar General Corporation, DOLGEN New York, LLC d/b/a DOLGEN, DOLGENCORP of Texas, Inc.* assigned docket number 7:23-cv-00558 (the "NY

---

[6] On November 14, 2022,    Defendants (under various entities) in the OH Overcharge Matter removed the matter to the United States District Court for the Northern District of Ohio. As such, docket sheets for both the state court and federal court are attached

Overcharge Matter").  A copy of the complaint and docket sheets is attached as **Composite Exhibit 10**.[7]

30.     On or about February 7, 2023, Defendants (under various entities) were served with the NY Overcharge Matter summons and complaint. *See Exh.* 10, p. 98 at ¶ 2.

31.     The plaintiffs in the NJ, OH, and NY Overcharge Matters and the OH AG Matter all alleged that Defendants (under various entities) engaged in a practice of regularly charging consumers a higher price at the register than the price of merchandise advertised on the shelves at the time of sale at Defendant's stores. *See Exhibits 7-10*

32.     Defendants used the same policies and procedures that they employed in charging a higher price than advertised to Plaintiff when selling the same and/or similar merchandise to numerous other consumers in Oklahoma stores.

33.     In the three-year period before the Complaint was filed, Defendants charged prices that were higher than advertised that were the same or similar to the advertisements described, *supra*, to numerous consumers in its Oklahoma stores.

34.     Defendants maintain a policy and practice to overcharge its customers a higher price at the register for merchandise than the price advertised on the unit price labels for the same merchandise on the shelves in Defendants' Oklahoma stores.

### *Defendants Routinely Overcharge Consumers at a Rate Which Well Exceeds Acceptable Industry Standards.*

35.     The National Institute for Standards and Technology (NIST) is part of the U.S. Department of Commerce. *See* 15 U.S.C. § 272(a).

---

[7] On November 14, 2022,     Defendants (under various entities) in the OH Overcharge Matter removed the matter to the United States District Court for the Northern District of Ohio. As such, docket sheets for both the state court and federal court are attached

36.     One of the NIST's functions is to "cooperate with the States in securing uniformity in weights and measures laws and methods of inspection." *See* 15 U.S.C. § 272(a)(4).

37.     Through this, the NIST publishes an annual handbook which, amongst other functions, sets forth examination procedures for states to conduct price verification inspections in stores like Dollar General. The latest version of the handbook is NIST Handbook 130 (the "NIST Handbook"). *See* NIST Handbook, Part V[8].

38.     The Handbook further states "[a]ccuracy information, based on a percentage of errors found in a sample and the ratio of overcharges to undercharges, constitutes useful criteria for evaluating the "pricing integrity" of the store." *See* Handbook, Part V, Section 10.1.

39.     The NIST Handbook states, in relevant part that "[t]he accuracy requirement for a sample must be 98 % or higher to "pass" a single inspection." *See* NIST Handbook 130, at Part V, § 10.2.

40.     For example, to be compliant under NIST Handbook 130, at Part V, § 10.2, a store would need to have charged a higher price than advertised on 2, or less, products out of 100 products examined per store.

41.     Defendants, routinely throughout the proposed class period, charged prices higher than advertised more than the 2%-or-less rate that is purportedly acceptable by the NIST Handbook.[9]

---

[8] The 2022 Edition of the Handbook can be accessed at https://www.nist.gov/document/nist-hb130e2022 (last visited    Jan. 14, 2024).

[9] Plaintiffs do not concede the NIST Handbook is a defense to any of Plaintiffs' claims and expressly reserve all rights to contest any overcharge by Defendant as part of the causes of action stated herein.

42.    Between Plaintiff's May 2023 and August 27, 2023, visits to Dollar General, Defendants overcharged her on nine (9) out of the twenty-seven (27) items she purchased, or a 33.33% overcharge rate. *See* Exhibits 2, 3 and 5.

43.    Defendants have been audited by multiple state agencies which have discovered widespread errors and overcharging.

44.    For example, in New York, the Monroe County Department of Weights and Measures, New York State Department of Agriculture and Markets Bureau of Weights and Measures, Colombia County Weights & Measures, and Fulton County Department of Weights and Measures have audited Defendants.  **See Composite Exhibit 11**.

45.    On November 17, 2022, Defendants were found to have charged a higher price than advertised on 78 out of 100 items sampled (78% overcharge rate). *Id.* at 16.

46.    On November 30, 2022, Defendants were found to have charged a higher price than advertised on 23 out of 75 items sampled (30.67% overcharge rate). *Id.* at 1.

47.    On December 5, 2022, Defendants were found to have charged a higher price than advertised on 6 out of 25 items sampled (24% overcharge rate). *Id.* at 7.

48.    On December 8, 2022, Defendants were found to have charged a higher price than advertised on 32 out of 100 items sampled (32% overcharge rate). *Id.* at 21.

49.    On December 27, 2022, Defendants were found to have charged a higher price than advertised on 23 out of 100 items sampled (23% overcharge rate). *Id.* at 11.

50.    Widespread overcharging practices are not limited to New York, Ohio, and New Jersey. Other states have also noted Defendants' policy and practice of overcharging including Wisconsin and North Carolina.

51.     Based on audits conducted across the country, it is obvious that Defendants continually charge a higher price than advertised at rates well above the allegedly acceptable 2% within its stores over the last three years.

52.     These audits conclusively demonstrate the widespread pricing inaccuracies across Defendants' stores.  At best, Defendants' practices could be described as poor "pricing integrity," but more accurately, Defendants appear to be recklessly and/or intentionally misleading its customers in an effort to increase their profits at consumers' expense by overcharging them at checkout.

53.     Therefore, Defendants' overcharging is more than "harmless error" and Defendants have failed and/or refused to stop this practice which costs consumers in Oklahoma and helps boost Defendants' profits---which exceeded $3.3 Billion in 2022 alone.[10]

## CLASS ACTION ALLEGATIONS

54.     This action is brought and may properly proceed as a class action, pursuant to the provisions of Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. The Plaintiff brings this action on behalf of herself and all others similarly situated. Plaintiff seeks certification of the class defined as follows:

> All consumers who at any time on or after the day three years prior to the date on which this Complaint was filed, paid more for merchandise than the advertised price labeled on the shelf at a Dollar General store located in Oklahoma.

55.     Excluded from the Class are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which

---

[10] See "Dollar General Corporation Reports Fourth Quarter and Fiscal Year 2022 Results" Mar. 23, 2023. https://newscenter.dollargeneral.com/news/dollar-general-corporation-reports-fourth-quarter-and-fiscal-year-2022-results.htm#:~:text=Fiscal%20year%202022%20net%20sales,fiscal%202022%20were%20%2024678.1%20million. (last visited December 4, 2023).

Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

56.    Plaintiff reserves the right to modify or amend the definition of the proposed classes as appropriate.

57.    <u>Numerosity</u>, Fed R. Civ. P. 23(a)(1): The Class is so numerous that joinder of all members is impracticable. This conclusion is reasonable given the number of stores that the Defendants operated in Oklahoma as of January 1, 2023 and the number of customers at each of the Defendants' stores on a daily basis is likely dozens, if not hundreds or thousands of customers.

58.    <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact are common to the Class members and predominate over any questions affecting only individual Class members. These include:

    a.    Whether the mis-priced shelf price labels violate Okla. Stat. Tit. 15, §§ 751, et seq.;

    b.    Whether Defendants engaged in "consumer" conduct under Okla. Stat. Tit. 15, §§ 751, et seq.;

    c.    Whether Defendants' conduct was materially misleading under Okla. Stat. Tit. 15, §§ 751, et seq.;

    d.    Whether Defendants' practice is likely to mislead a reasonable consumer acting reasonably under the circumstances under Okla. Stat. Tit. 15, §§ 751, et seq.;

    e.    Whether Defendants' practice of charging consumers higher prices on merchandise than advertised was likely to mislead a reasonable consumer;

f.  Whether Plaintiff and members of the class suffered injury as a result of Defendants' conduct under Okla. Stat. Tit. 15, §§ 751, et seq.;

g.  Whether Defendants should be enjoined from charging consumers higher prices on merchandise than advertised;

h.  Whether Defendants' conduct was unconscionable in that it knew or had reason to know that the transaction it induced the consumer to enter into was excessively one-sided in its favor so as to warrant punitive damages pursuant to Okla. Stat. Tit. 15, § §761.1(B).

59.    Typicality, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of the claims of the members of the class which he represents because all such claims arise out of the same policies, practices, and conduct, and the same or similar documents used by Defendants in their dealings with Plaintiff and putative class members.

60.    Adequacy, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class members in that they have no conflicts of interest with other Class members. Plaintiff seeks no relief that is antagonistic or adverse to the Class members and the infringement of the rights and the damages Plaintiff has suffered are typical of other Class members. Plaintiff has retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

61.    Superiority and Manageability, Fed. R. Civ. P. 23(b)(3): The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary

duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Further, even for those Class members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

62.     Defendants acted, or refused to act, on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

63.     A class action will cause an orderly and expeditious administration of the claims of the subclass, and will foster economies of time, effort and expense.

64.     Plaintiff does not anticipate any difficulty in the management of this litigation.

## CLASS CLAIMS

### COUNT ONE (On Behalf of Plaintiff and the Class)
### Violation of the Oklahoma Consumer Protection Act
### Okla. Stat. Tit. 15, §§ 751, et. seq.

65.     Plaintiff repeats and realleges all of the prior allegations as if set forth at length herein.

66.     DGC and DOLGEN are each a "person," as meant by Okla. Stat. tit. 15, § 752(1).

67.     Defendants' advertisements, offers of sales, sales, and distribution of goods, services, and other things of value constituted "consumer transactions" as meant by Okla. Stat. tit. 15, § 752(2).

68.     Defendants have engaged in, and continue to engage in, deceptive acts and practices in violation of Okla. Stat. Tit. 15, §§ 751, *et seq*.

69.    Defendants, in the course of their business, engaged in unlawful practices in violation of Okla. Stat. tit. 15, § 753, including the following:

a.    Making false or misleading representations, knowingly or with reason to know, as to the characteristics, uses, and benefits of the subjects of its consumer transactions;

b.    Representing, knowingly or with reason to know, that the subjects of its consumer transactions were of a particular standard when they were of another;

c.    Advertising, knowingly or with reason to know, the subjects of its consumer transactions with intent not to sell as advertised;

d.    Making false or misleading statements of fact, knowingly or with reason to know, concerning the price of the subject of a consumer transaction or the reason for, existence of, or amounts of price reduction;

e.    Committing deceptive trade practices that deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person as defined by section 752(13);

f.    Committing unfair trade practices that offend established public policy and was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers as defined by section 752(14).

70.    Defendants' misrepresentations and false, deceptive, and misleading statements and omissions with respect to charging consumers more than the price advertised on its unit price labels at Defendants' Oklahoma stores, constitute deceptive practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state, in violation of Okla. Stat. Tit. 15, §§ 751, *et seq.*

71.     Defendants' false, deceptive, and misleading statements and omissions would have been material to any potential consumer's decision to purchase merchandise from Defendants' Oklahoma stores.

72.     Defendants' improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff and other Class Members to purchase and/or pay an overcharged price for Defendants' merchandise and goods.

73.     Defendants knew at the time it advertised via its unit price shelf labels certain goods to Class members and prospective customers that the consumers would be charged a higher price than advertised and that its promise was false because at the time of the unit price labeling Defendant itself are in control of setting forth both the advertised price and the price consumers are charged at checkout. This is further evidenced by Defendant's actions in still overcharging its consumers as of May 2023, seven (7) months *after* two separate lawsuits were filed against Defendant making similar allegations. As such, Defendants' conduct is also unconscionable under Okla. Stat. Tit. 15, § 761.1(B), and punitive damages are appropriate.

74.     As a direct and proximate result of Defendants' unlawful deceptive acts and practices, Plaintiff and the other members of the Class suffered and continue to suffer injuries based on the difference of the price advertised on the shelf versus the price charged at checkout. As a result of Defendants' recurring deceptive acts and practices, Plaintiff and other Class Members are entitled to monetary and compensatory damages, injunctive relief, restitution, and disgorgement of all money obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs. This includes actual damages under OK Stat. §15-761.1, as well as statutory damages of up to $2,000.00 per violation pursuant to OK Stat. §15-761.1(B).

75.    Plaintiff and Class Members further seek equitable relief against Defendants. Pursuant to Okla. Stat. Tit. 15, §§ 751, *et seq*., this Court has the power to award such relief, including but not limited to, an order declaring Defendants' practices as alleged herein to be unlawful, an Order enjoining Defendant from undertaking any further unlawful conduct, and an order directing Defendants to refund to Plaintiffs and the Class all amounts wrongfully overcharged.

76.    Defendants know full well that it overcharges consumers, and the misrepresentations they make with regard to advertised prices were made for the purpose of inducing consumers to purchase merchandise at its Oklahoma stores so that it can reap outrageous profits to the direct detriment of Oklahoma consumers without regard to the consequences its actions cause such consumers. As such, the Defendants' actions are unconscionable and actuated by bad faith, lack of fair dealing, actual malice, or accompanied by wanton and willful disregard for consumers' well-being. Defendants are therefore additionally liable for punitive damages, in an amount to be determined at trial.

### COUNT TWO (On Behalf of Plaintiff and the Class) Unjust Enrichment

77.    Plaintiff repeats and realleges all of the prior allegations as if set forth at length herein.

78.    By overcharging Plaintiff and others similarly situated, Defendants received a benefit that Defendants were not entitled to.

79.    Defendants knew and continue to know that they have received this benefit, *to wit*: the monies collected by Defendants through their overcharging practice that they had no right to receive.

80.     Defendants have not returned the overcharged amounts to Plaintiff or others similarly situated and it would be unjust and/or inequitable to allow Defendants to retain this ill-gotten benefit.

81.     Oklahoma courts recognize relief in instances such as this.  See Lapkin v. Garland Bloodworth, Inc., 2001 OK CIV APP 29, 23 P.3d 958 (Oklahoma recognizes the availability for recovery of amounts where it would inequitable to allow a party to retain a benefit a the expense of another).

82.     As a result, Plaintiff and others similarly situated, are entitled to reimbursement of all amounts overcharged by Defendants in addition to other relief as appropriate under Oklahoma law.

## COUNT THREE (On Behalf of Plaintiff and the Class)
## Conversion

83.     Plaintiff repeats and realleges all of the prior allegations as if set forth at length herein.

84.     Defendants' practice represents an intentional policy to overcharge Oklahoma customers and retain the monies collected as a result of the overcharging.

85.     In charging more money for products than advertised and wrongfully retaining the excess funds, Defendants have deprived Plaintiff and others similarly situated of the ability to utilize their money to the detriment of Plaintiff and Class Members.

86.     Therefore, Defendants' overcharging caused Plaintiff and Class Members damages justifying compensatory and punitive damages.

## COUNT FOUR (On Behalf of Plaintiff and the Class)
## Civil Conspiracy

87.     Plaintiff repeats and realleges all of the prior allegations as if set forth at length herein.

88.     DG and DOLGEN, as separate and distinct legal entities and are therefore separate "persons" under Oklahoma law.  See, e.g., Fanning v. Brown, 85 P.3d 841 (Okla. 2004).

89.     As separate persons, Defendants conspired with each other to initiate a policy and/or practice of unlawfully overcharging Plaintiff and others similarly situated while retaining the ill-gotten funds.

90.     Upon information and belief, Defendants' purpose in conducting this conspiracy is to maximize their profit at the expense of Plaintiff and Class Members.

91.     Defendants' conspiracy to engage in the overcharging policy and/or practice caused harm to Plaintiff and Class Members justifying compensatory and punitive damages.

**COUNT FIVE (On Behalf of Plaintiff and the Class)**
**Fraudulent Misrepresentation/Statutory Deceit 76 O.S. § 2**

92.     Plaintiff repeats and realleges all of the prior allegations as if set forth at length herein.

93.     As set out above, Defendants intentionally and knowingly made false representations, material omissions, and/or concealments to Plaintiff and the Class Members as to the pricing of the goods in Defendants' stores.

94.     Defendants intentionally and knowingly implemented policies and procedures that required, allowed for, or otherwise encouraged Defendants' stores to misrepresent the pricings of the goods on its shelves.

95.     Defendants knew that the goods on its shelves were mispriced, misleading, or otherwise a misrepresentation of the price that Plaintiff and the Class Members would be charged for the goods at the cash register.

96.    Defendants knew that these misrepresentations, omissions, and/or concealments were material, significant, and essential to Plaintiff and the Class Members in their decisions to shop at Dollar General Stores and purchases these goods.

97.    Defendants' misrepresentations, omissions, and/or concealments had a tendency to and did deceive Plaintiff and the Class Members.

98.    Defendants intended for Plaintiff and the Class Members to rely on the price labels on its shelves.

99.    Plaintiff and the Class Members did not have the means to discover these misrepresentations, omissions, and/or concealments. Plaintiff and the Class Members had reason to believe and justifiably relied on Defendants' representations that the prices of the shelves were the prices they would be charged at the register.

100.   Plaintiff and the Class Members would not have purchased the mispriced goods from Dollar General if they had known that the prices on the shelves were not accurate representations of the prices they would be charged at the register.

101.   Plaintiff and the Class Members would not have shopped or otherwise done business with Defendants' stores if they had known that Defendants implemented a scheme to misrepresent the prices of the goods on its shelves.

102.   Defendants acted with knowledge and willful intent, with reckless disregard for Plaintiff and the Class Members, and/or intentionally with malice towards Plaintiff and the Class Members. As a result, Plaintiff and the Class Members are entitled to punitive damages.

103.   As a result of Defendants' intentional misrepresentations, omissions, and/or concealments, Plaintiff and the Class Members have incurred monetary damages, lost time, attorney fees, and costs.

**COUNT SIX (On Behalf of Plaintiff and the Class)**
**Negligent Misrepresentation**

104.    Plaintiff repeats and realleges all of the prior allegations as if set forth at length herein.

105.    Alternatively, Defendants negligently and/or or recklessly made false representations, material omissions, and/or concealments to Plaintiff and the Class Members as to the pricing of the goods in Defendants' stores by failing to correct their widespread pricing disparities at Oklahoma Dollar General stores.

106.    Even if Defendants did not actually have knowledge that the goods on its shelves were mispriced, misleading, or otherwise a misrepresentation of the price that Plaintiff and the Class Members would be charged for the goods at the cash register, Defendants should have known of issues with its Oklahoma Dollar General stores given the notice that Defendants had received by virtue of other lawsuits across the country or because Plaintiff herself had previously complained to DOLGEN.

107.    Defendants also should have known that Plaintiff and the Class Members would likely rely on the price labels on Dollar General store shelves.

108.    Plaintiff and the Class Members did not have the means to discover these misrepresentations, omissions, and/or concealments. Plaintiff and the Class Members had reason to believe and justifiably relied on Defendants' representations that the prices of the shelves were the prices they would be charged at the register.

109.    Plaintiff and the Class Members would not have purchased the mispriced goods from Dollar General if they had known that the prices on the shelves were not accurate representations of the prices they would be charged at the register.

110.    Plaintiff and the Class Members would not have shopped or otherwise done business with Defendants' stores if they had known that Defendants failed to implement policies to ensure pricing accuracy or had widespread pricing errors.

111.    Defendants' failure to adopt reasonable measures to ensure pricing accuracy was a complete disregard for their "duty to not injure or harm another person[.]" See Silver v. Slusher, 770 P.2d 878, at 886 (Okla. 1989)(negligent misrepresentation may cause compensable harm).

112.    Defendants acted with such reckless disregard for Plaintiff and the Class Members, and/or with malice towards Plaintiff and the Class Members. As a result, Plaintiff and the Class Members are entitled to punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Lori Hartline, individually and on behalf of those similarly situated, respectfully requests that this Court grants judgment against Defendants Dollar General Corporation and Dolgencorp, LLC and issue an Order:

A.  Finding that this action satisfies the prerequisites for Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class and Subclass, each as defined, *supra*;

B.  Designating the Plaintiff as a representative of the Class and Subclass, and his undersigned counsel as Class Counsel;

C.  Awarding the Plaintiff, Class and Subclass their actual damages;

D.  Awarding the Plaintiff, Class and Subclass their statutory damages, as applicable;

E.  Awarding Injunctive relief requiring Defendant to provide an accounting identifying all members of the class;

F.  Awarding injunctive relief requiring Defendant to provide an accounting of all overcharges

during the class period;

G. Issuing a declaratory judgment that Defendant's actions in providing its Oklahoma customers with shelf advertisements that understate the actual price of the merchandise charged to its customers, like those Plaintiffs encountered, violate Okla. Stat. Tit. 15, §§ 751, et seq.;

H. Issuing a declaratory judgment requiring Defendant to cease providing unlawful advertisements to its customers in Oklahoma and also to cease charging more than the price advertised on the shelf of its Oklahoma stores.

I. Awarding injunctive relief enjoining Defendant from engaging in future violations of Okla. Stat. Tit. 15, §§ 751, et seq.;

J. Awarding equitable relief requiring Defendant to disgorge all improper gains received due to their violations of Oklahoma state laws directly to identifiable class members, via a *cy pres* award;

K. Awarding injunctive relief requiring Defendant to provide notice to all members of the class that their purchases at Dollar General stores in Oklahoma may have violated Okla. Stat. Tit. 15, §§ 751, et seq. and that if they were harmed or aggrieved or sustained and ascertainable loss that they can bring individual actions for treble damages, statutory damages, and punitive damages under the Okla. Stat. Tit. 15, §§ 751, et seq. and for an award of attorneys' fees and costs pursuant to Okla. Stat. Tit. 15, §761.1.

L. Issuing an award of reasonable attorneys' fees and costs of suit in connection with this action, pursuant to the court's equitable powers and the Okla. Stat. Tit. 15, §761.1.

M. Awarding the Plaintiff, Class and Subclass punitive damages, as applicable;

N. Awarding the Plaintiff, Class and Subclass pre-judgment and post-judgment interest, if

applicable, and

O.  Granting all such further and other relief as this Court deems just and appropriate.

### **JURY DEMAND**

Plaintiffs Lori Hartline, individually and on behalf of all others similarly situated, demands

a trial by jury on all issues subject to trial.

Respectfully Submitted,

/s/ William B. Federman
William B. Federman OBA #2853
Jessica A. Wilkes OBA #34823
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
wbf@federmanlaw.com
jaw@federmanlaw.com

Brian D. Flick (0081605)*
Marc E. Dann (0039425)*
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
Tel: (513) 645-3488
Fax: (216) 373-0536
notices@dannlaw.com

*Pro Hac Vice Applications Anticipated

*Proposed Interim Lead Class Counsel for
Plaintiffs and the Putative Class*