IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LORI HARTLINE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 24-CV-27-GLJ |
| | ) |
| DOLLAR GENERAL | ) |
| CORPORATION, and | ) |
| DOLGENCORP, LLC, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court is Dollar General Corporation's and DolGenCorp, LLC'S Motion to Compel Arbitration and Brief in Support ("Motion to Compel Arbitration") [Docket No. 29] and Dollar General Corporation's and DolGenCorp, LLC's Motion to Stay Proceedings Pending Resolution of Their Motion to Compel Arbitration and Brief in Support ("Motion to Stay") [Docket No. 30]. For the reasons stated below, the Court finds that Defendants' Motion to Compel Arbitration should be GRANTED and the Motion to Stay should therefore be DENIED AS MOOT.

## BACKGROUND

In October 2020, Plaintiff Lori Hartline, utilized Dollar General's mobile application to enroll in a Dollar General account ("DG Account") which allows a customer to utilize coupons, promotions, or discounts in a Dollar General store at the time of purchase. Docket No. 29-1. To enroll in a DG Account, Claimant had to, *inter alia*, check a click-box indicating that she acknowledged, read, and agreed to Dollar General's Terms

and Conditions ("Terms"). Docket No. 29-1, pp. 5-6. At the time Plaintiff created her DG Account, the Terms contained a section titled "Disputes." Docket No. 29-1, p. 20. This section contained an arbitration agreement which provided:

> **YOU AND DOLLAR GENERAL AGREE THAT IN THE EVENT OF ANY CLAIM, DISPUTE, OR CONTROVERSY . . . ARISING OUT OF, RELATING TO, OR CONNECTED IN ANY WAY WITH THE WEBSITES AND/OR APP, OR THE BREACH, ENFORCEMENT, INTERPRETATION, OR VALIDITY OF THESE TERMS . . . WILL BE RESOLVED EXCLUSIVELY BY FINAL AND BINDING ARBITRATION, EXCEPT AS OTHERWISE SET FORTH IN THESE TERMS.**

("Arbitration Agreement"). Docket No. 29-1, pp. 20-21. Prior to initiating arbitration, the Arbitration Agreement required that a written notice be sent to Dollar General, and **"[i]f the parties cannot reach an agreement within sixty (60) days from the receipt of the Notice, either party may initiate arbitration proceedings."** ("Notice Provision") Docket No. 29-1, p. 21. The "Dispute" section of the Terms also contained a waiver of class action litigation that stated, in relevant part:

> **YOU UNDERSTAND AND AGREE THAT THE MAKING OF CLAIMS OR RESOLUTION OF DISPUTES PURSUANT TO THIS AGREEMENT SHALL BE IN YOUR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. . . . NOTWITHSTANDING THE FOREGOING, IF A COURT DETERMINES THAT PUBLIC INJUNCTIVE RELIEF MAY NOT BE WAIVED AND ALL APPEALS FROM THE DECISION HAVE BEEN EXHAUSTED, THEN THE PARTIES AGREE THAT THIS ARBITRATION SHALL SURVIVE AND ANY CLAIM FOR PUBLIC INJUNCTIVE RELIEF SHALL BE STAYED PENDING ARBITRATION OF THE REMAINING CLAIMS.**

*Id.* ("Class Waiver Provision"). The Terms were updated in May 2021, October 2022, and June 2023, and Plaintiff agreed to these updates in September 2022, January 2023, and

September 2023, respectively. Docket No. 29-1, pp. 8-10. Each iteration contained an Arbitration Provision, Notice Provision, and Class Waiver Provision identical to the ones Plaintiff agreed to when she created her account in October 2020. Docket No. 29-1, pp. 20-21, 31, 42-43, 55-57.

In the spring and summer of 2023, Plaintiff made several visits to a Dollar General store located in Porum, Oklahoma, and purchased merchandise. Docket No. 2. During some of these transactions Plaintiff utilized her DG Account, via the Dollar General website or mobile application, to avail herself of discounts and/or coupons. Docket No. 29, p. 13. Plaintiff alleges that during these visits she was charged a higher price for her merchandise at the register than the price labelled at the shelves. Docket No. 2. Consequently, on January 19, 2024, she filed this action on behalf of herself and putative class members alleging Dollar General Corporation and Dolgencorp, LLC, (collectively "Defendants") maintain a policy and practice to overcharge their customers. Docket No. 2. Because Plaintiff utilized her DG Account in connection with some of her purchases, Defendants moved to compel Plaintiff to individual arbitration based on the Arbitration Agreement and Class Waiver Provision contained in the Terms. Docket No. 29. Defendants also moved to stay the case pending resolution of their motion to compel this matter to arbitration.

## ANALYSIS

Arbitration agreements such as the one at issue are governed by the Federal Arbitration Act ("FAA"). Under the FAA, "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . .

shall be valid irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The Supreme Court has 'long recognized and enforced a liberal federal policy favoring arbitration agreements.'" *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2002) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). Whether the parties have a valid arbitration agreement is a gateway matter which is "presumptively for courts to decide." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569, n. 2 (2013). "[U]pon being satisfied that the making of the agreement for arbitration is not in issue . . . the [C]ourt shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Plaintiff does not argue that an agreement to arbitrate was never formed, but instead asserts that her claims do not fall within the scope of the Arbitration Agreement. Docket No. 35.

However, "the question of *who* should decide arbitrability precedes the question of *whether* a dispute is arbitrable." *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017) (citing *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998)). Indeed, the parties may agree to delegate the issue of arbitrability to the arbitrator. *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1105 (10th Cir. 2020) ("[D]elegation clauses within arbitration contracts can commit the determination of [arbitrability] issues to an arbitrator."). These agreements are "[o]ften referred to as delegation provisions, . . . [and] are separate, antecedent agreements to an arbitration agreement[.]" *Clements v. Alto Trust Co.*, 685 F. Supp. 3d 1249, 1265 (D.N.M. Aug. 4, 2023) (quoting *Dish Network LLC, v. Ray¸* 900 F.3d 1240, 1245 (10th Cir. 2018)) (internal

-4-

quotations omitted). Such an agreement must be evinced by clear and unmistakable evidence. *First Options of Chi. Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (noting courts "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so.") (alterations in original) (quoting *AT&T Techs., Inc. v. Comm's Workers of Am.*, 475 U.S. 643, 649 (1986)). "Clear and unmistakable 'evidence' of [an] agreement to arbitrate arbitrability might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 79-80 (2010) (Stevens J., dissenting) (citing *First Options of Chi., Inc.*, 514 U.S. at 946.

Defendants contend that the Arbitration Agreement clearly and unmistakably delegates arbitrability to the arbitrator and, therefore, whether Plaintiff's claims fall within the scope of the arbitration agreement is a determination for the arbitrator and not this Court.[1] Docket No 29, p. 4. In support of this contention, Defendants note the Arbitration Agreement provides that, "any claim, dispute, or controversy . . . arising out of, relating to, or connected in any way with the websites and/or app, or the breach, enforcement, interpretation, or validity of these terms . . . will be resolved exclusively by final and binding arbitration[.]" *Id.* Plaintiff concedes that the Arbitration Agreement contains a delegation clause but asserts that it (1) is unenforceable because it conflicts with the Notice Provision and Class Waiver Provision and, as a result, is ambiguous as to whether an

---

[1] Notably, the Arbitration Agreement could only apply to those individuals of the putative class members who, like the putative class representative, agreed to the Terms by creating a DG Account and subsequently utilized the Dollar General website or mobile application in connection with their purchases.

arbitrator or a court is to decide gateway issues of arbitrability; and (2) "fails to delegate questions regarding the *scope* of the agreement to the arbitrator and only delegates questions regarding 'the breach, enforcement, interpretation, or validity of' the Agreement."[2] Docket No. 35, pp. 1-2, 4-10. The Court finds both arguments unpersuasive.

*Mutual Assent.* Plaintiff contends that the delegation clause is unenforceable because it is ambiguous as to whether the clause truly delegates questions of arbitrability to the arbitrator. In determining whether a party has agreed to arbitration, the Court applies "ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute." *Walker v. BuildDirect Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013). For a contract to be enforceable, Oklahoma law[3] requires "'mutual consent or a meeting of the minds on all essential terms of the contract.'" *S. Cent. Indus. v. Kerrtas Mktg., LLC*, 2022 WL 1518935, at *2 (W.D. Okla. Feb. 7, 2022) (quoting *Young v. Chappell*, 2010 OK CIV APP 76, ¶ 8, 239 P.3d 476, 479).

---

[2] On October 8, 2024, Defendants filed a Notice of Supplemental Authority in Support of Their Motion to Compel Arbitration [Docket No. 39] apprising the Court that the Middle District of Tennessee recently granted Dollar General Corporation's motion to compel arbitration in *Cotton v. Dollar Gen. Corp.*, 2024 WL 3640473 (M.D. Ten. Aug. 2, 2024), which involves the same Arbitration Agreement, and substantially the same claims and allegations at issue herein. That same day, Plaintiff filed a Response and Objection to Defendants' Notice of Supplemental Authority [Docket No. 40] in which Plaintiff correctly notes that the arguments raised in opposition to the motion to compel arbitration in *Cotton* differ from those raised here.

[3] Both Parties cite to Oklahoma law as governing the Arbitration Agreement. Notably, however, the Arbitration Agreement provides that "all claims will be governed by the laws of the FAA, the applicable laws of the United States of America, and the laws of the state of Tennessee[.]" Docket No. 29-1, p. 42. Tennessee law also requires "a contract . . . result from a meeting of the minds of the parties in mutual assent to the term[.]" *In re Estate of Josephson*, 2012 WL 3984613, at *2 (Tenn. Ct. App. Sept. 11, 2012).

Courts have found that arbitration agreements do not clearly and unmistakably delegate gateway issues of arbitrability to an arbitrator where the agreement contains language that a court may determine a portion of the arbitration provision to be unenforceable because "a provision referring only to 'a court' injects significant ambiguity into the question of whether the contract actually authorizes an arbitrator alone to address arbitrability." *Vidal v. Advanced Care Staffing, LLC*, 2023 WL 2783251, at *9 (E.D.N.Y. Apr. 3, 2023); *Vargas v. Delivery Outsourcing, LLC,* 2016 WL 946112, at *7 (N.D. Cal. March 14, 2016) ("[D]espite clear language delegating arbitrability to the arbitrator, the issue of delegation is made ambiguous by the language of the arbitration provision that permits modification of the . . . Agreement should 'a court of law or equity' hold any provision of the Agreement unenforceable. The Agreement cannot be read as providing a 'clear and unmistakable' delegation to [an] arbitrator."); *Jacksen v. Chapman Scottsdale Autoplex, LLC*, 2021 WL 3410912, at *3 (D. Ariz. July 21, 2021) (noting severability clauses that suggest a court may find an agreement unenforceable "have been found inconsistent with broad delegations of decision-making authority to arbitrators.") (collecting cases). In this vein, Plaintiff contends that the Notice Provision and the Class Waiver Provision both contain language that calls into question whether the Arbitration Agreement sufficiently authorizes an arbitrator to address arbitrability in this case. Both provisions are addressed in turn.[4]

---

[4] Defendants maintain that the Court should not consider Plaintiff's arguments that the delegation clause is ambiguous because Plaintiff points to language outside of the delegation clause and, therefore, has not challenged the delegation clause specifically. Docket No. 37, p. 5-6. *See Rent-A-Center*, 561 U.S. at 71-72 ("Accordingly, unless Jackson challenged the delegation provision

Plaintiff first asserts that, because the Notice Provision contemplates that the parties "meet and confer" prior to the initiation of any arbitration, it contradicts the Arbitration Agreement's requirement that all claims will be resolved *exclusively* by final and binding arbitration. Docket No. 35, p. 7-8. In support of her position, Plaintiff relies solely on *OptumRx, Inc. v. A&S Drugs LLC*, 2023 WL 6170802 (C.D. Cal. Sept. 20, 2023), asserting that the District Court for the Central District of California found a similar provision conflicted with a delegation clause and, therefore, found there was not clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. However, *OptumRx* is inapposite because the arbitration agreement at issue in *OptumRx, Inc.* contained language significantly different from the Notice Provision contained in the Terms.

In *OptumRx*, OptumRx sought to compel arbitration asserting that a provision of their provider manual required all disputes, including those relating to arbitrability be compelled to arbitration. *OptumRx, Inc*, 2023 WL 6170802, at *2. OptumRx argued that their provider manual contained a delegation clause by providing:

> Other than with respect to issues giving rise to immediate termination hereof or non-renewal hereof, the parties will work in good faith to resolve any and all issues, disputes, or controversies between them . . . including, but not limited to all questions of arbitrability or the formation, , [sic] validity, scope, and interpretation of this arbitration agreement, all disputes relating in any way to the parties['] relationship, the agreement, or the PM or the breach of either agreement, and all disputes relating in any way to Network Pharmacy Provider's status as a participating Network Pharmacy Provider in the Administrator's network, shall be resolved exclusively by binding arbitration administered by the American Arbitration Association[.]

specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."). However, despite pointing to language outside of the delegation clause, the thrust of Plaintiff's argument is that the delegation clause is invalid, not that the Arbitration Agreement as a whole is invalid.

*Id*. The Central District of California disagreed with OptumRx and found this language to be ambiguous, concluding that this provision imposed two obligations on the parties–one to work in good faith and another to arbitrate "disputes relating in any way to Network Pharmacy Provider's Status as a participation Network Pharmacy Provider in the Administrator's network[.]" *Id.* at *4 (alteration in original). On its face, that language differs from that of the Notice Provision in this case. Unlike the OptumRx provider manual, which created an obligation to arbitrate disputes and an obligation to work in good faith to resolve disputes in the same sentence, the language of the Dollar General Arbitration Agreement: (i) clearly delegates gateway issues of arbitrability to the arbitrator in one paragraph, (ii) in a separate paragraph requires the party seeking arbitration to provide notice to the other party of such intent, and (iii) if the parties cannot reach an agreement within sixty days, only then may arbitration be initiated. Docket No. 29-1, p. 21. The separation of these two provisions removes any ambiguity. The Arbitration Agreement requires that the parties arbitrate any disputes, including gateway issues of arbitrability; whereas the Notice Provision merely sets forth conditions that must be met prior to initiating arbitration. Nonetheless, the Court finds that even if the two provisions could be read to conflict, the Arbitration Agreement resolves any such inconsistency by requiring arbitration "except as otherwise set forth in the[ T]erms." Docket No. 29-1, p. 20-21. *See Mohamed v. Uber Tech., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (finding a venue provision that granted state or federal courts in the city and County of San Francisco did not conflict with a delegation clause because the arbitration provision eliminated any

inconsistency because "[t]he clause describing the scope of the provision was prefaced with '[e]xcept as it otherwise provides[.]'").

Plaintiff also maintains that the delegation clause is ambiguous because the Class Waiver Provision provides **"NOTWITHSTANDING THE FOREGOING, IF A COURT DETERMINES THAT PUBLIC INJUNCTIVE RELIEF MAY NOT BE WAIVED AND ALL APPEALS FROM THE DECISION HAVE BEEN EXHAUSTED THEN THE PARTIES AGREE THAT THE ARBITRATION AGREEMENT SHALL SURVIVE AND ANY CLAIM FOR PUBLIC INJUNCTIVE RELIEF SHALL BE STAYED PENDING ARBITRATION OF THE REMAINING CLAIMS"** and this "provision referring only to 'a court' injects significant ambiguity into the question of whether the contract actually authorizes an arbitrator alone to address arbitrability." Docket No. 35, p. 9 (quoting *Vidal*, 2023 WL 2783251, at *9). Defendants agree that this language indicates "a court will resolve any challenge to a waiver of public injunctive relief[]" and not an arbitrator, Docket No. 37, p. 7, but nevertheless maintain that, because the Arbitration Agreement contains language to resolve such discrepancies, the delegation clause remains enforceable.[5] The Court agrees with Defendants. Indeed, as mentioned above, the Arbitration Agreement requires arbitration "except as otherwise set forth" in the Terms and as such, any conflict between the delegation clause and the Class Waiver Provision is artificial. *Mohamed*, 848 F.3d at 1209. Moreover, the Class Waiver

---

[5] As discussed below, because the delegation clause delegates challenges to the scope of the arbitration agreement to the arbitrator, whether Plaintiff's claims fall within this exception such that they should be addressed by the Court remains an issue for an arbitrator.

Provision itself acts to resolve any conflict and ambiguity as it is prefaced with the clause, "notwithstanding the foregoing," which further acts to override conflicting provisions. *See Brayman v. KeyPoint Government Solutions, Inc.*, 83 F.4th 823 (10th Cir. 2023) (finding a clause that provided "notwithstanding any other language in this Agreement" to override conflicting provisions and concluding that because "the rest of the provision says nothing about who decides arbitrability, . . . it is in no way contrary to the Arbitrator Decides Clause."). As such, despite this carveout to the scope of arbitrability, it remains that the Arbitration Agreement contains a delegation clause delegating questions of arbitrability to the arbitrator, including, as discussed below, questions pertaining to the scope of arbitration. Therefore, the Court finds that neither the Notice Provision nor the Class Waiver Provision conflict with the delegation clause.

*Scope.* Plaintiff next concedes that the delegation clause delegates challenges to the validity, interpretation, and enforceability of the Arbitration Agreement to the arbitrator but maintains that it reserves challenges to whether a particular claim falls within the scope of the Arbitration Agreement for the Court's determination. Although parties are free to structure their agreements in such a way that only some questions of arbitrability are delegated to an arbitrator and others are reserved for the court, "questions of arbitrability 'are typically delegated or preserved as a group[.]'" *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1301 (11th Cir. 2022) (quoting *JPay, Inc. v. Kobel*, 904 F.3d 923, 943 (11th Cir. 2018)). In fact, "a consistent body of case law has spoken of questions of arbitrability as a unitary category. There is no reason to consider whether any particular question of arbitrability is specifically delegated because the questions are typically delegated or

preserved as a group." *JPay*, 904 F.3d at 943 (citing *Rent-A-Center*, 561 U.S. 63 at 68-89.

Plaintiff argues that, because the Arbitration Agreement does not explicitly mention that it delegates challenges to the scope of the Arbitration Agreement to the arbitrator, the agreement thus reserves such issues for the court. However,

> [i]f questions of arbitrability are not delegated as a group by default, [the Court] would need to distinguish which questions of arbitrability require special additional indicia of delegation, and which, if any, would be delegated through language delegating questions of arbitrability only in general. . . . If . . . additional specific indicia of the delegation of particular questions of arbitrability [were required], contracting parties hoping to delegate as much as possible would be burdened with explicitly listing and delegating as many questions of arbitrability as they could think of. Even then, if an unforeseen question of arbitrability later arose, parties who had hoped to arbitrate all questions of arbitrability might be forced into court against their will if a court . . . reasoned that the explicit delegation of other questions implied that this new question was reserved for the court. [The Court] avoid[s] any complications and unpleasant results by treating questions of arbitrability as a group unless an agreement gives [it] a reason to do otherwise.

*Jpay*, 904 F.3d at 943. Here, the Arbitration Agreement does not give the Court reason to conclude that the parties intended to delegate questions of arbitrability individually rather than as a group. Indeed, even if the Court were to accept Plaintiff's interpretation and proceed to consider whether her claims fell within the scope of the Arbitration Agreement, the Court would then find itself tasked with *interpreting* the language of the Arbitration Agreement.[6] Interpretation of the Arbitration Agreement, as Plaintiff plainly concedes, is a task that has clearly been delegated to the arbitrator. Docket No. 35. Plaintiff does not

---

[6] Particularly, the Court would have to interpret whether Plaintiff's claims arise out of, relate to, or are connected in any way with the Dollar General website or mobile application. *See* Docket No. 35

explain how the interpretation of the Arbitration Agreement can be separate and distinct from determining whether Plaintiff's claims fall within the scope of Arbitration Agreement, and, in fact, her argument as to why her claims do not fall within the scope of the Arbitration Agreement reflects that the two are heavily intertwined. *See Id*. This interconnection further evinces the Parties' intent that the delegation clause delegates question of arbitrability as a group.

Plaintiff also claims that the delegation clause fails to delegate challenges to the scope of the Arbitration Agreement because the Agreement fails to designate or incorporate a particular association's arbitral rules (such as the American Arbitration Association's rules or the JAMS rules) to govern arbitration. However, there is no requirement that a delegation clause incorporate any such rules, and the Tenth Circuit has found clear and unmistakable evidence of a delegation clause in the absence of such language. *See Brayman*, 83 F.4th at 833-34 (10th Cir. 2023) (finding an arbitration agreement that states, "[T]he Arbitrator . . . shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement" to clearly and unmistakably delegate arbitrability to the arbitrator.).

Accordingly, the Court finds that the delegation clause at issue in this case clearly and unmistakably delegates gateway questions of arbitrability to the arbitrator, including those challenges relating to the scope of the arbitration agreement. Plaintiff is therefore compelled to arbitration while this matter is stayed pending resolution of any such proceedings. Because the Court finds that Defendants' Motion to Compel Arbitration is GRANTED, it therefore further finds that Dollar General Corporation's and Dolgencorp,

LLC's Motion to Stay Proceedings Pending Resolution of Their Motion to Compel Arbitration and Brief in Support [Docket No. 30] is DENIED AS MOOT.

## CONCLUSION

IT IS HEREBY ORDERED that Dollar General Corporation's and DolGenCorp, LLC's Motion to Compel Arbitration and Brief in Support [Docket No. 29] is GRANTED and Dollar General Corporation's and DolGenCorp, LLC's Motion to Stay Proceedings Pending Resolution of Their Motion to Compel Arbitration and Brief in Support [Docket No. 30] is DENIED AS MOOT.

IT IS FURTHER ORDERED that this action is STAYED pending resolution of any arbitration proceedings. The parties shall file a joint status report every ninety days from the date of this Order and jointly notify the Court within thirty-days of the conclusion of any arbitration proceedings.

IT IS SO ORDERED this 22nd day of August, 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**